Fidelity-Philadelphia Trust Company, Appellant, v. Bankers Life Insurance Company of Nebraska.

514

Argued April 17, 1952. Before Drew, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Daniel Mungall, Jr.,* with him *Stradley. Ronon, Stevens & Young,* for appellant.

*James J. O'Brien,* with him *Hubert P. Earle,* and *Fox, Rothschild, O'Brien & Frankel,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1952:

On April 30, 1948, Thomas McKean, aged 39, purchased for his son Radford McKean, aged 4, an "automatic estate builder" insurance policy providing for the payment of $20,000 to the named beneficiary if the insured (the son) died before reaching the age of 21. All rights in the policy vested in the insured when he reached the age of 21, at which time the ultimate face value of the policy upon payment of the same premiums as theretofore became $100,000.

To guarantee futurity of the policy, Thomas McKean, under a Prepaid Premium Agreement with the insurance company, deposited, on July 21, 1948, with the insurance company the sum of $16,315.67 to pay the remaining 19 annual premiums.

On July 30, 1949, Thomas McKean died as the result of an accident. The executor of his estate, the Fidelity-Philadelphia Trust Company, at once demanded that the insurance company pay over to the estate the unused portions of the premiums on the paid-up policy belonging to Radford McKean. This the insurance company refused to do. The executor then brought suit in assumpsit against the insurance company, the Girard Trust Company of Philadelphia as guardian of Radford McKean, and Catherine R. McKean, mother of Radford, named the contingent beneficiary in the policy.

The lower court rendered judgment for the defendants and the plaintiff has appealed to this Court.

Stated quite objectively, the question posed by the opposing parties is: Shall the $14,756.63 remaining as unpaid premiums be paid over to the estate or shall it be used to pay premiums on the policy taken out by the father for his son?

In answering this question we seek only one polestar and that is the intent of the donor, Thomas McKean. That intent is to be derived from two documents, the insurance policy and the Premium Prepaid Agreement. In *Landreth v. First Natl. Bank of Phila.*, 346 Pa. 551, 31 A. 2d 161, this Court said: " 'A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together': Restatement, Contracts, §235 (c)."

Exploring the entire area covered by these two documents we can arrive at only one conclusion, namely, that Thomas McKean's purpose was to provide financial security for his child, and not to enrich his own estate. In *Hindman v. Farren*, 353 Pa. 33, 44 A. 2d 241, this Court said: " 'It is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement.' " The surrounding circumstances and other factors involved in this case emphasize the father's solicitude to supply what is known as an "automatic estate builder" for his child.

If, as plaintiff's argue, the elaborate arrangements made by the decedent were only for the purpose of restoring to his estate the unpaid premiums on his son's policy, he could well have avoided all this trouble by simply paying the premiums when due. Upon his

death, then, the estate would have in its possession what was not paid out. The very common sense of the situation dictates a continuation of the payment of premiums for which funds were specifically set aside.

Although it is true that the donor reserved the right in the Prepaid Premium Agreement to withdraw "whole commuted values," and it is also true that Catherine McKean, mother of the insured, had the right to surrender the policy, these combined circumstances do not negative the original and controlling intent of the donor. It is to be assumed that a father and mother would not selfishly or capriciously throw away the cloak of their son's security.

The agreement provides that in the event of the surrender of the policy all unused commuted values "shall be paid to me or my estate." The surrender could not occur until after the father's death because Catherine McKean, as a contingent beneficiary, would not have any power to act unless the principal beneficiary, Thomas McKean, were dead. Thus, if the appellants' interpretation were the controlling one, namely, that the unpaid premiums would revert to the decedent's estate upon the death of the decedent, the clause above quoted would be meaningless because there would be *no* policy for Mrs. McKean to surrender, once the unused commuted values *had already been paid to the estate.* That provision, as the lower court pointed out, could only have significance in the event Mrs. McKean might surrender the policy before the deposit was exhausted, and after the death of Mr. McKean, in which event the balance of the deposit would pass into the father's estate by the terms of the contract.

The agreement also provides that in the event of the death of the insured, before the premiums specified have all been paid, "payment is to be made to me or my estate of the unused commuted values." How could the

decedent direct that the deposit be paid to his estate upon his son's death unless he intended the premium payments to continue so long as his son lived?

The attending circumstances, as well as the language of the policy and the agreement, indicate, as already stated, that the primary purpose of the arrangement was not to provide a profitable financial investment for the father, but to establish a program for the building of the son's estate which would continue despite the father's death.

At the time of the issuance of the insurance policy and the execution of the Prepaid Premium Agreement, Thomas McKean was a wealthy man, only 39 years old, and in good health. The insured, who was his only child, resided with his mother Catherine R. McKean, she and the deceased having been divorced on March 21, 1945. On March 22, 1946, Thomas McKean married Virginia Marshall McKean, with whom he was living at the time of his death. He made substantial provision for his wife by a deed of trust executed in March, 1947, the assets of which trust did not pass under the terms of the decedent's will. This trust comprised securities in excess of $900,000 with an annual income of some $32,000, out of which income the decedent's first wife receives $5,000 per year, with the balance over to his second wife after his death and at her death over to his son Radford.

The incorporation of the insurance policy into the Prepaid Premium Agreement made Radford McKean and Catherine R. McKean donee beneficiaries under that agreement, and the benefits accruing to them become irrevocable, in view of the consideration passing between the two original parties. In *Brill v. Brill*, 282 Pa. 276, 127 A. 840, this Court said: "It further appears from the general tenor of the authorities that the question as to whether or not the third person is a

party to the consideration is not a conclusive factor. The consideration may be paid wholly by the promisee and yet the third person may be the one for whose benefit the promise is primarily made and in such case the third person has a right of action."

Quoting from Williston's Treatise on the Law of Contracts, the Superior Court said in *Logan v. Glass,* 136 Pa. Superior Ct. 221, 227, 7 A. 2d 116: "According to this view the donee beneficiary acquires a right at once upon the making of the contract and that right becomes immediately indefeasible. There is weight of authority in support of this view. . .". In *Edmundson's Estate,* 259 Pa. 429, 103 A. 277, this Court quoted with approval from *Adams v. Kuehn,* 119 Pa. 76, 85, 13 A. 184, where Mr. Justice WILLIAMS said: "Where one person enters into a contract with another to pay money to a third, or to deliver some valuable thing, and such third party is the only party interested in the payment or the delivery, he can release the promisor from performance or compel performance by suit."

In the light of the current law and the established facts in this case, there can be no doubt that Radford McKean and Catherine McKean could compel performance of the Agreement entered into between Thomas McKean and the Insurance Company.

Thomas McKean's right to withdraw the unused portion of the deposit made under the Prepaid Premium Agreement was in the nature of a right of revocation, but since, with his death, it no longer exists, it therefore, cannot pass to his personal representative. *Lines v. Lines,* 142 Pa. 149, 21 A. 809.; *Sheasley Trust,* 366 Pa. 316, 77 A. 2d 448.

In his Adjudication the Trial Judge said: "We think the decedent sufficiently stated in his contract with the Insurance Company what the entire factual context irresistibly reveals as his general intention—

a father seeking to benefit his son. The Insurance Company is contractually bound to apply the deposit in its hands to the payment of premiums as they come due, until and unless one of the events provided for in the agreement occurs. None of the events provided for in the agreement have occurred upon which may be predicated the payment of unused commuted values to the decedent's estate."

We agree with this conclusion and the Judgment is affirmed.