**ISBRANDTSEN CO., Inc. v. LOCAL 1291 OF INTERNATIONAL LONGSHOREMEN'S ASS'N.**

**No. 10896.**

United States Court of Appeals
Third Circuit.

Argued April 7, 1953.

Decided May 7, 1953.

Samuel B. Fortenbaugh, Jr., Philadelphia, Pa. (Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Hunt, Hill & Betts, New York City, on the brief), for appellant.

Abraham E. Freedman, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves a suit on a contract by one not a party to it. Action was brought in the district court, and that court, upon motion by the defendant, dismissed the case under rule 12(b), F.R.C.P. 28 U.S.C.[1] We proceed, as did the district court, on the assumption that all statements of fact alleged are true.

---

1. The district court's opinion is reported in 107 F.Supp. 72.

Here are the facts. Isbrandtsen Company, Inc., was the time charterer of a ship called the "Nyco." Isbrandtsen in turn chartered the ship to the Scott Paper Company for the purpose of transporting pulp from Nova Scotia to Philadelphia. Under the terms of the charter Scott Paper Company was to load and unload the vessel. Scott in turn hired Lavino Shipping Company to do the unloading. When the vessel got to its destination the employees of Lavino started to unload it, and during the unloading stopped work contrary to the provisions of the contract which their union had made with their employer. More needs to be said about that contract. The parties to it were the Philadelphia Marine Trade Association, of which Lavino Shipping Company was a member, "as collective bargaining agent for those of its members who employ longshoremen", and Local 1291 of the International Longshoremen's Association. The contract provided among other things that there was to be no work stoppage pending arbitration of disputes which might arise. Isbrandtsen, alleging that the delay in unloading the ship caused it damage, sued under Section 301(a) of the Labor Management Relations Act of 1947.[2] Alternatively it claimed, there being diversity of citizenship and the requisite jurisdictional amount, to be able to recover as a matter of common law.

Local 1291 has made the point that the provision of the Labor Management Relations Act gives no right to sue to anyone except employer and employee. The statute does not, however, so state. It says: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a).

All the statute talks about is a suit for violation of the contract; it does not say who may or who may not sue. The legislative history cited by the appellee is certainly inconclusive with regard to the rights of those not signatory to the contract, and a point of view contrary to appellee's argument seems to be indicated by the decision in Marranzano v. Riggs National Bank, 1950, 87 U.S.App.D.C. 195, 184 F.2d 349.[3] We need not decide this point, however.

We may assume that § 301(a) does not impose any limitations upon the persons who may sue. Our question then becomes, is Isbrandtsen to be included as one who may sue for damages suffered by breach of this contract?

It may aid in understanding the problem if it is kept in mind just how far away Isbrandtsen stands from the actual parties to the contract. Signatories were, as said above, Philadelphia Marine Trade Association and Local 1291. Lavino Shipping Company is a member of that Association. Scott made its contract for unloading the vessel with Lavino. Scott in turn chartered this vessel from Isbrandtsen. Isbrandtsen is, then, three steps away from the contracting party.

The question of determining what rights one who is not a party to a contract has in its performance is one which is not free from difficulty. As Professor Williston points out, the first recognition of such rights was in the cases now called the donee beneficiary type.[4] Here the courts protected the interest of the person for whose benefit the performance was intended to prevent a failure of justice.

2. 29 U.S.C.A. § 185(a).

3. But cf. MacKay v. Loew's, Inc., D.C.S.D. Cal., 1949, 84 F.Supp. 676, affirmed on other grounds, 9 Cir., 1950, 182 F.2d 170, certiorari denied 1950, 340 U.S. 828, 71 S. Ct. 65, 95 L.Ed. 608, rehearing denied 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643; Schatte v. International Alliance, etc., D.C.S.D.Cal.1949, 84 F.Supp. 669, affirmed on other grounds, 9 Cir., 1950, 182 F.2d 158, certiorari denied, 1950, 340 U. S. 827, 71 S.Ct. 64, 95 L.Ed. 608, rehearing denied 340 U.S. 885, 71 S.Ct. 194, 95 L.Ed. 643.

4. 2 Williston on Contracts, § 357 (Rev. ed. 1936).

The party to the contract would have no action for its breach except for nominal damages since he was not the one who suffered by the promisor's default. If the beneficiary could not sue there could be no adequate recovery even though the breach was established. The next extension was made, with hesitancy on the part of some courts, to the creditor beneficiary situation. "[T]hrough this travail," in Mr. Williston's words, "the common law has given birth to a distinct, new principle of law which takes its own place in the family of legal principles, and gives not only to a donee beneficiary, but also to a creditor beneficiary, the right to enforce directly the promise from which he derives his interest." [5]

So we have the classification of donee beneficiary, creditor beneficiary and incidental beneficiary, a classification discussed in the works of both Williston and Corbin and used in the Restatement. As Mr. Corbin says, the description of the term "incidental beneficiary" to describe one "whose relation to the contracting parties is such that the courts will not recognize any legal right in him" is not particularly helpful "for the problem of the courts is to determine what kinds of claimants asserting themselves to be beneficiaries have rights and what kinds have not." [6]

Corbin goes on to describe what constitutes a creditor beneficiary and what constitutes a donee beneficiary.[7] He says: "If in buying the promise the promisee expresses an intent that some third party shall receive either the security of the executory promise or the benefit of performance as a gift, that party is a donee of either the contract right or of the promised performance or both. If, on the other hand, the promisee's expressed intent is that some third party shall receive the performance in satisfaction and discharge of some actual or supposed duty or liability of the promisee, the third party is a creditor beneficiary. All others who may in some way be benefited by performance have no rights and are called incidental beneficiaries." [8]

We see no possibility that Isbrandtsen can be a creditor beneficiary of this labor union. The labor union was a complete stranger to Isbrandtsen so far as this transaction is concerned. Neither owed the other anything. And, therefore, there was no obligation on the part of either to do anything to or for the other.[9] Nor do we see any possibility of making out of this situation a donee beneficiary relationship. This is not like a contract where a father buys an insurance policy to build up an estate for his son.[10] It was a labor contract made between this association and a union. The contract recited that the association was acting on behalf of its members who employ longshoremen. Lavino is one of those members. But it does not appear that either Scott or Isbrandtsen was a member, and there is no allegation that either one employed longshoremen.

There is considerable language in the Restatement and in the cases and decisions about "intent" and "accompanying circumstances." [11] From that the argument is made to us that the court should not have

---

5. Ibid. See also id. at § 361; 4 Corbin on Contracts 2-4, 28-31, 34-38 (1951).

6. 4 Corbin on Contracts, § 779C (1951).

7. The discussion of Corbin is in accord with the statements which appear in the Restatement of Contracts, §§ 133–147, and in 2 Williston on Contracts, §§ 356–361 (Rev. ed. 1936). Corbin's language is quoted because it is the most recent statement on the subject by an established authority.

8. 4 Corbin on Contracts 41 (1951).

9. For a discussion of this sort of contract see Corbin, op. cit. supra, § 779D.

See also Restatement, Contracts, § 133 (1) (b), § 147.

10. As in Fidelity-Philadelphia Trust Co. v. Bankers' Life Ins. Co., 1952, 370 Pa. 513, 88 A.2d 710.

11. M. E. Smith & Co. v. Wilson, 8 Cir., 1925, 9 F.2d 51; In re Gubelman, 2 Cir., 1926, 13 F.2d 730, 48 A.L.R. 1037; Fidelity-Philadelphia Trust Co. v. Bankers' Life Ins. Co., supra note 10; Brill v. Brill, 1925, 282 Pa. 276, 127 A. 840; Note, 81 A.L.R. 1271. Williston, Corbin, and the Restatement make a distinction between donee and creditor beneficiaries in this regard; "intent to benefit" should

dismissed under Rule 12 but should have heard the plaintiff upon an attempt to make a showing of the supposed intention of the parties with regard to persons to benefit by this contract.[12]

But we think that the whole setting of this fact situation as described in the complaint and exhibits is one which completely negatives a gift transaction under any possible interpretation of that term. The contract between the association and the labor union was a usual type of collective bargaining agreement. The contract between Isbrandtsen and Scott was a charter party in the ordinary form made upon stated money consideration. We do not have before us a copy of the contract between Scott and Lavino, but the complaint describes it as an agreement whereby Lavino promised Scott to discharge a cargo of wood pulp from the vessel. We cannot think that Lavino was making a gift to Scott or that Scott was making a gift to Isbrandtsen. In other words, all the transactions were usual business transactions in which parties were agreeing to do things for and pay money to each other.

We do not think, therefore, that in view of this business setting any statement by the marine association that it intended its agreement with the labor union to benefit all the world who might be helped by the faithful performance of the contract would give these remote parties rights against one who broke it.[13] It may well be that Isbrandtsen suffered a loss of use of its boat because a strike stopped the unloading of the Nyco. It also may be that the people who had cargo to ship on the next voyage lost a market by the delay. And it may be that the people who did not get the goods on the next voyage, on time, lost a profitable bargain on that account. But neither in contract nor in tort have duties been extended very far beyond the immediate parties to the facts out of which a cause of action is said to arise. If one induces another to break a contract with a third person that third person has a tort claim against the one who procured the breach. But while Lumley could sue Gye for inducing Miss Wagner not to sing for Lumley as she had promised, no one would, we think, allow an action for breach of contract on the part of all the disappointed opera goers who did not hear Miss Wagner, even though the ultimate effect of performance by Miss Wagner would have been to send them home with the pleased feeling of having heard something beautiful.[14]

The question was thoughtfully considered by the district judge. He concluded that Isbrandtsen was but "an incidental beneficiary" and in this conclusion he was right. Isbrandtsen is too far away from this contract to be included either as a donee or a creditor beneficiary and it must be one or the other in order to sue for breach of an agreement to which it was not a party.

It may be an arguable question whether the underlying law here will be found in federal decisions, assuming that plaintiff bases his claim upon a federal statute and

be an operative factor only in the case of donee beneficiaries. Restatement, Contracts, § 133; Williston, op. cit. supra, § 356A; Corbin, op. cit. supra, §§ 776–777.

12. Plaintiff relies on this Court's liberal interpretation of when a complaint states a cause of action. See, e.g., Continental Collieries v. Shober, 3 Cir., 1942, 130 F. 2d 631; Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580.

13. We are reinforced in this conclusion by the fact that the contract does not mention, or even allude to, any third party. While a third party need not be ascertained when the contract is made in order to acquire a right thereunder, Restatement, Contracts, § 139, we have found no case in which a right has been held to exist in a third party whose existence is not referred to in the contract. Cf. United States v. Huff, 5 Cir., 1948, 165 F.2d 720, 1 A.L.R.2d 854. It is the intention of the promisee which is said to govern, but there is no authority known to us which carries this principle to the extent of holding liable a promisor whose contemplation of a third party does not appear from the contract. See Williston, op. cit. supra, at p. 1045; Corbin, op. cit. supra, at p. 18. See note 15, infra.

14. Lumley v. Gye, 2 E. & B. 216 (1853). In general, see Restatement, Torts, § 766 et seq.; Prosser on Torts, 972–1013 (1941 ed.).

comes within federal authority under the commerce power, or whether it is a question of Pennsylvania law by virtue of diversity of citizenship since the agreement and its breach took place in that state. That question need not be resolved. We think that Robins Dry Dock & Repair Company v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, shows clearly that there could be no recovery under federal authority, and the same thing is true under the Pennsylvania decisions.[15]

The judgment of the district court will be affirmed.

---

15. If anything, the current rule in Pennsylvania appears to be stricter, as shown in Spires v. Hanover Fire Ins. Co., 1950, 364 Pa. 52, 70 A.2d 828, where the present Chief Justice of Pennsylvania's Supreme Court denied recovery by an alleged third party beneficiary because the contract did not disclose that *both* the parties thereto intended to confer a right on him. At the very least the opinion supports the proposition that the promisor must have contemplated the existence of a third party before he can be held liable to him.