## Hartley, etc., v. United Mine Workers of America, Robena Local Union No. 6321, etc.

2

*Scott & Hook*, for plaintiff.

*Pollock & Pollock* and *Anthony Cavalcante*, for defendants.

HOOK, P. J., September 28, 1954.—Plaintiff filed a complaint in assumpsit against defendant to recover the sum of $11,676, allegedly due on a check dated November 6, 1952, drawn on the account of defendant in the Second National Bank of Masontown, Pa., payable to plaintiff, signed by the president, financial secretary, and treasurer of defendant local union, and delivered to plaintiff in payment of the balance due for two certain lots or tracts of land conveyed by deed dated November 25, 1952, duly executed, acknowledged and delivered to Arthur L. Hall, Sr., Joseph Kurinchak, Sr., and John Glagola, trustees, United Mine Workers of America, Local Union No. 6321, their successors or assigns; the check was endorsed by plaintiff and deposited in due course, and payment stopped on December 1, 1952, by Alfred E. Cavalcante, president of defendant local union, and thereafter, on December 2, 1952, duly protested by the Second National Bank of Masontown, Pa.

Defendant local union filed an answer alleging that the hall committee and trustees of the local union were

without power or authority on behalf of defendant to enter into a purchase of said land from plaintiff; that the check was delivered on November 29, 1952, without the direction or authority of defendant; that the execution of this deed by plaintiff, the delivery of the deed to the trustees, and the recording of the deed was without the direction or authority of defendant.

The matter came on for trial, and a jury found in favor of plaintiff. Defendant filed a motion for judgment on point reserved; a motion for judgment n. o. v., and a motion for a new trial, setting forth 25 specific reasons. The matter came on for argument, and is now before this court for adjudication.

On the motion for a new trial, defendant contends, by the fifth, sixth, seventh, eighth, ninth and tenth reasons, that this court erred in admitting in evidence parts of plaintiff's bill of complaint which plaintiff alleged defendant had admitted by the corresponding paragraph of the answer. We believe a careful reading of the complaint and the answer, conclusively, shows that defendant did admit certain facts averred by plaintiff. In matters of this kind we follow the rule set forth in Buehler v. United States Fashion Plate Co., 269 Pa. 428, 433:

"While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly. A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact, but does not become such for purposes of trial, unless put before the jury in one of three ways: (3) by offering in evidence specific parts of the statement of claim, with what counsel conceive to be the replies thereto contained in the affidavit of defense, and having the facts thus sought to be established placed on the notes of trial as admitted, because averred in the statement and not denied in the affidavit of defense." See also

Melnick v. Melnick et al., 154 Pa. Superior Ct. 481, 491; Commonwealth, by Truscott et al., v. Binenstock, 358 Pa. 644.

In the present case plaintiff, in addition to offering the complaint and answer, as hereinbefore set forth, also offered the minute book of defendant local union, and testimony of witnesses covering all facts admitted by the answer, therefore the foregoing reasons are overruled and dismissed.

By the eleventh, thirteenth, fourteenth, twentieth, twenty-first, twenty-second and twenty-fourth reasons for a new trial, defendant contends that plaintiff has the definite burden to prove agency, and that the existence of the agency on the evidence is a question of law which the court cannot evade, and that there was no lawful admissible evidence that the trustees and the hall committee, or either of them, had authority to bind the union to a contract for the purchase of the land, and that there is no lawful admissible evidence that the union authorized the use of the check sued upon as a consideration for the deed of November 25, 1952.

Defendant is an unincorporated association, embracing employes of the Robena mine of the United States Steel Corporation in Greene County, Pa., operating under a charter granted by the United Mine Workers of America, an unincorporated association. The bylaws constitute the agreement between the union and its members, and are subject to the rules of construction as a written contract signed by all the parties: Constructors Association of Western Pennsylvania v Seeds, 142 Pa. Superior Ct. 59, 61; Constructors Association of Western Pennsylvania v. Furman, 165 Pa. Superior Ct. 248.

Article I, sec. 4, of the bylaws of defendant reads:

"The officers of this local union shall be one president, one vice-president, one recording secretary, one

financial secretary, one treasurer, three trustees . . ."

Article II defines the duties of the officers and committee:

"Section 6. The trustees shall have charge of all local union property and be responsible for that property."

The minutes show that on January 11, 1948, at a meeting of the members, a resolution was adopted appointing three "more members to assist the local's trustees in locating a suitable location for the erection of a hall". William Rahoe, Ignatius Pokorny and John Belch were appointed members of said committee. The hall committee and the trustees continued to act and make reports from time to time to the membership. Since such a committee was not provided by the bylaws, we consider it to be a special committee for the purpose of selecting a site upon which a hall was to be erected for the local union.

Plaintiff herein is the owner of a large tract of land situate in Monongahela Township, this county, known as the Durr farm, through which Pennsylvania traffic route no. 21 crosses. On the south side of this highway plaintiff laid out a plan of lots known as the Mason Heights plan of lots, and sold therefrom many lots with a restriction that no building be erected thereon within 35 feet of the highway, and no building erected thereon costing less than $8,000. The premises in dispute are on the north side of the highway, and on that side of the highway plaintiff sold one lot with a building restriction.

Prior to October 25, 1952, several members of the hall committee contacted plaintiff concerning the sale of part of plaintiff's land. Later, the members of the hall committee and the trustees secured an attorney from Uniontown, Pa., and went upon the ground and determined the area to be purchased. On this occasion, a writing was prepared by the attorney and

signed by plaintiff relative to the $100 down payment prior to the survey.

The testimony shows that the hall committee and trustees selected: (1) A tract of land containing 10.776 acres located 195 feet north of and parallel to highway route no. 21, for the purpose of building a hall, ball park and parking; (2) a lot 120 by 125 feet fronting on said highway, for the purpose of having a grass plot next to the highway. John Glagola, one of the trustees, testified concerning the use of the lots:

"Q. No building, just grass?

"A. No buildings. That's why Hartley put it in the deed. . . . We don't want nothing to be built over there."

The hall committee and trustees made a report to the members of the property selected, and on October 25, 1952, a resolution was adopted "that Robena hall committee, through an attorney, contact Mr. Josephus Hartley and purchase the ground as brought up by hall committee for hall site". By this resolution the local union approved the premises selected by the hall committee and trustees, and authorized the purchase thereof, without further report to the local, the only requirement being that they act through an attorney.

The first deed plaintiff submitted to the trustees described the lot fronting on the highway as parcel no. 1. This lot was made subject to a building restriction in the amount of $8,000, and that no building be constructed within 35 feet of the State highway route no. 21. Parcel no. 2 in said deed contained 10.776 acres and is located north of parcel no. 1. Both parcels were subject to the reservation of the Pittsburgh or River vein of coal, the Sewickley or Mapletown vein of coal, and to the reservation of the oil and gas in and underlying both parcels. The entire conveyance was subject to all existing easements, pipe lines and rights of way. The survey showed a telephone line right of way along

the State highway in front of parcel no. 1, and that a gas line of the Carnegie Natural Gas Company crossed the northeast corner of parcel no. 2. The foregoing restrictions and reservation above set forth were the same as contained in all deeds for properties conveyed by plaintiff fronting on the State highway.

The minutes of the local union for November 8, 1952, show that a report was made by the hall committee by John Belch, and the following motion adopted:

"Motion made by John Belch that according to committee's findings on hall site all is in order and should be purchased by local union to conclude deal. Seconded by John Ozanich. Motion voted on and passed."

Although the minutes for the meeting held November 8th do not set forth that the first deed prepared by plaintiff for the premises conveyed was read to the membership and discussed, several witnesses testified that the deed was read and its contents discussed, and that, thereafter, a resolution was adopted as aforesaid that the "local union conclude the deal".

While the resolutions for October 25 and November 8, 1952, may be termed an authority to do a special act, to wit, pay the purchase price and receive a conveyance for the premises, the means by which these acts were to be performed were general, and as there were no limitations in the resolutions by which the purchase should be accomplished, it is clear that the trustees were the proper officers to conclude the deal, and that they had full and complete authority to do so.

Several days after the meeting of November 8th, John Glagola, Arthur Hall and John Kurinchak, trustees, and Alfred Cavalcante, president, came to Waynesburg and met Mr. Hartley and his attorney. At this meeting Mr. Hartley was requested to change the form of the deed by inserting the names of the three trustees. It was also agreed that an additional

restriction concerning the construction of an oil and gas service station on parcel no. 1 be included in the deed. A second deed was prepared and given to defendants' trustees or president for the purpose of having the same examined by an attorney.

The next regular meeting of defendant union was held on November 25, 1952; evidently the proposed deed was read to the members, as the minutes contain the following:

"Trustees' report on Deed to Hall Site purchase made by Arthur Hall, Sr. Remarks on Trustees' report made by Brothers Frank Knopsky, Charles Blair, Alonzo Rhodes, Anthony Starazy, Arthur Farrell, Fred Scharler, Mike Belch, Arthur Hall, A. Cavalcante, Clarence Rhodes, John Belch, Albert Cavalcante. Brother John Belch further reported on said report and deed of Hall Site and suggested that if Local cannot get clear title to said land that local forget said site. Motion made by Leroy Anderson that if Local cannot get clear deed full title to all Mineral Rights and all veins of coal to said land site that Local reject said property. Amendment to motion made by Frank Knopsky that restrictions be lifted from the two front lots and on the building to be built. Seconded by Charles Ligenfield. Remarks on motion made by John Belch, Alonzo Rhodes, A. Cavalcante, Fred Scharler, Arthur Farrell. Remarks on amendment made by John Belch. Amendment to motion put to vote and passed. Motion put to vote and passed. Brother Alex Jones brought up the question that after motion was voted on and passed that motion concludes that if property cannot be purchased by clear title that local drop said subject. Members discussed question. Motion made by George Barber that if deal is rejected for Hall Site that the $11,000.00 be put aside and earmarked as a Building Fund of Local Union No. 6321. Seconded by John Belch. Remarks on motion made by

B. Kaprive, Alex Jones, Anthony Starazy, A. Hall, Sr. and Frank Knopsky. Motion voted on and passed."

A few days after this meeting, Arthur Hall and John Kurinchak, two of the trustees who testified that they were instructed to go back and contact Mr. Hartley and have a deed with all mineral rights and the restrictions discussed at the meeting eliminated therefrom, came to Waynesburg, and again met with Mr. Hartley and his attorney. A new deed was prepared eliminating the reservation of the Mapletown or Sewickley vein of coal, and all restrictions on the two lots except the 35-foot building restriction. This deed met with the approval of the two trustees, and their attorney, Mr. Balaban. Plaintiff then executed and acknowledged the deed and placed the same in the hands of Mr. Balaban, attorney, for delivery to defendant local union. On the following Saturday, the two trustees came to Waynesburg, were advised by Mr. Balaban that the title to said premises was good and marketable, and thereafter delivered the check in suit to plaintiff in payment of the balance due thereon. We do not question the right of the trustees to act as they did, and conclude the sale.

After the deed had been recorded, defendant local union held a special meeting on December 6, 1952. The minutes for said meeting contain the following:

"The first issue taken up was property to be purchased by Robena local. Brother Joseph Kurinchak of Hall Committee, one of local's trustees, presented deed to property to be read to members. Chairman read deed to members for their approval. F. Sec., member of hall committee, drew sketch of property and location of pipe line running through property for members to view. . . . Bro. Hershal Phares suggested that if local check is still being held that local pay charges for recording deed and cancel property. Motion made by Albert Cavalcante that local contact their attorney and find out if local can withdraw from

said contract of property purchased. This motion was put to vote and passed."

Defendant claims (2) that the trustees were not authorized to purchase the premises, unless all restrictions on the two front lots were removed from the deed. John Kurinchak, Sr., and Arthur Hall, two of the trustees, contend otherwise.

In our opinion, the language in the resolution "that restrictions be lifted from two front lots and on buildings to be built" is ambiguous, and not clear as to what "restrictions" the resolutions referred to. While the minutes of defendant local union are prima facie evidence of the transactions recorded therein, competent testimony is always admissible to explain ambiguities, to correct errors, or to supply omissions if the minutes are incomplete: Schmidt v. Paul, 377 Pa. 377, 383; Malone v. Melnick, 378 Pa. 483, 487.

What the court said in the case of Lipsie v. Dickey, 375 Pa. 230, 234, is applicable:

"Be that as it may, the best that can be said of the words in question is that they are ambiguous, and therefore there is applicable the well-established principle that where there is doubt or ambiguity as to the meaning of the covenants in a contract or the terms of a grant they should receive a construction that will accord with the intention of the parties, and that, in order to ascertain that intention, there must be taken into consideration the surrounding circumstances, the situation of the parties, the objects they apparently had in view, and the nature of the subject-matter; Slonaker v. P. G. Publishing Co., 338 Pa. 292, 296, 13 A. 2d 48, 50, 51; Hindman v. Farren, 353 Pa. 33, 35, 44 A. 2d 241, 242; De Moss, Admrx. v. Beryllium Corporation of Pennsylvania, 358 Pa. 470, 472, 473, 58 A. 2d 70, 72; Betterman v. American Stores Co., 367 Pa. 193, 203, 204, 80 A. 2d 66, 73; Fidelity-Philadelphia Trust Co. v. Bankers Life Insurance Co.

of Nebraska, 370 Pa. 513, 516, 88 A. 2d 710, 711. It is equally well established that, where a written instrument is ambiguous, either party may produce oral evidence to resolve the ambiguity: Security Trust Co. of Pottstown v. Stapp, 332 Pa. 9, 13, 1 A. 2d 236, 238; Waldman v. Shoemaker, 367 Pa. 587, 591, 80 A. 2d 776, 778; Dorrington v. Manning, 135 Pa. Superior Ct. 194, 200, 4 A. 2d 886, 889; Fischer v. Anderson, 173 Pa. Superior Ct. 175, 178, 179; 96 A. 2d 168, 170." See also Heat & Power Corporation v. Foust Distilling Co., 378 Pa. 133.

Testimony was offered by plaintiff and defendant concerning the meeting held November 22, 1952, not to contradict, alter or add to the terms of the minutes, but to explain what the parties understood the ambiguous word "restrictions" to mean. Frank Knopsky, Arthur Ferrell and Albert Cavalcante testified the restrictions on the front lots referred to the building within 35 feet of the highway; while Arthur Hall, John Kurinchak, Sr., and John Belch testified that the 35-foot building restriction never entered into the discussions or resolutions at the meetings until after the deed had been recorded. In fact, they each stated that this 35-foot building restriction was in all the deeds and that they had all agreed that the 35-foot restriction was to their advantage since the local union did not intend to build on the lots.

This phase of the case presented the only factual controversy, as we so stated in the charge. "We then come down to the question of the thirty-five foot restriction. Was that restriction discussed at that meeting and one of the matters which formed the basis for Mr. Knopsky's amendment to the resolution?" There was, as heretofore outlined, abundant conflicting evidence to warrant submission of this question to the jury. The jury having found in favor of plaintiff, that question is now eliminated from our consideration.

Defendant further contends that the trustees acted without authority in delivering the check for $11,676. The testimony shows that after the meeting on October 25, 1952, when the local union authorized the purchase of the ground for a hall site, and prior to the meeting on November 8, 1952, the check for $11,676 was made out by George Barber, treasurer, and signed by John Belch, financial secretary. The check had not been signed by Alfred Cavalcante, president. The minutes for the meeting held November 8th shows that Alfred Cavalcante, "Chairman explained to members on refusal of signing of hall site check as reported by Brother Belch." Thereafter, at this meeting, he signed the check. Defendant local union admits that the authority to sign checks for the local union is vested in the president, financial secretary and treasurer. Defendant local union having admitted that the check was executed by the proper officers, and then placed in the hands of the trustees to conclude the deal, is bound by the delivery thereof to plaintiff. If the authority was wanting, which it was not, that is a matter between the local union and its officers. Defendant, although an unincorporated organization, uses bylaws, methods and forms similar to incorporated bodies for the prosecution of its affairs, and is bound by the same legal principles, insofar as the execution and delivery of the check in suit are concerned.

In the present case, defendant clothed its trustees with certain powers, and in the negotiations and dealings with plaintiff, held out to him that the trustees were the officers and agents of defendant local union to conduct and conclude the purchase of the real estate. There is not one word of testimony in this case that plaintiff ever misled defendant at any time during the negotiations and the closing of the deal. He cooperated with the hall committee and trustees, and in the end had the final deed prepared according to

the instructions given by two trustees, Hall and Kurinchak.

Both Hall and Kurinchak, two of the three trustees, testified that they had the right and authority to conclude the purchase, accept delivery of the deed and transfer the check to plaintiff. At no time since the transaction was concluded have they disaffirmed or disavowed the deal.

It is true that one who asserts an agent possesses power to act for another has the burden of proving it, and that in certain cases the extent of his powers is to be determined as a matter of law where proof depends on parol and the facts are undisputed. In the case of Reifsnyder et al., v. Dougherty, 301 Pa. 328, 333, the court said:

"The liability of a principal to third parties for the acts of an agent may rest on the following grounds: (1) express authority, or that which is directly granted; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel, which arises where the principal, by his culpable negligence in failing to supervise the affairs of his agent, allows him to exercise powers not granted to him, and so justifies others in believing he possesses the requisite authority."

In this case defendant admits that the trustees were duly elected officers of the local union, and that they were the only officers performing any duties or having any responsibility for the property of the local union. The relation of principal and agent having been already established by defendant local union and the trustees, the only question here involved is whether there was sufficient evidence to support a finding that the trustees, Hall and Kurinchak, with whom plaintiff dealt, had authority to deliver the check and accept

delivery of the deed on behalf of the defendant. We are of opinion that the evidence, read in the light most favorable to plaintiff, as it must be, was sufficient.

Although defendant local union refused to honor the check in suit on December 19, 1952, it was not until November 16, 1953 that it executed and recorded without the knowledge of plaintiff, a quit claim deed to plaintiff, which was executed by the president and secretary of the local union, and not by the trustees.

In the A. L. I. Restatement of the Law of Agency, the general rule as to the creation of apparent authority is set forth in §27:

"Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

Section 52 sets forth the rule when authority to buy or sell is inferred, as follows:

"Unless otherwise agreed, authority to buy property for the principal . . . is inferred from authority to conduct transactions for the principal, if such purchase . . . is incidental to such transactions, usually accompanies them or is reasonably necessary in accompanying them."

Section 62 contains the rule for authority to pay or receive purchase price:

"Unless otherwise agreed, authority to contract for purchase of sale or to make or receive a conveyance on terms by which part or all of the price is payable at the time that the contract or conveyance is made, includes authority to pay or to receive so much of the price as is payable at such times."

In the case of Diuguid v. Bethel African Methodist Episcopal Church of Pittsburgh, 119 Pa. Superior Ct. 493, 496, the court said:

"Therefore, the question here involved is whether there was sufficient evidence to support a finding that the members of the board of trustees with whom plaintiff dealt had authority to enter into, on behalf of defendant, the oral contract upon which the action was based. We are of opinion that the evidence, read in the light most favorable to the plaintiff, as it must be, was sufficient. The testimony shows that the only persons with whom plaintiff dealt were the pastor of the church and the three members of the board of trustees, known as the house or building committee, a designation which implied they had charge of the maintenance of the church building. At all times while the work was in progress, one of the members of this committee was present, watching the plaintiff and overseeing the work. From this testimony it is a reasonable inference that the other trustees left the matter of the repair and decoration of the church building entirely in the hands of the house committee and the pastor. Under these circumstances, plaintiff had a right to infer that these men, members of the governing board of the church, had full authority to make contracts on its behalf relating to the work he was doing. Even if these trustees did not have express authority to do so—and it was testified that under the by-laws of the church (not offered in evidence) only the board of trustees, acting as a board, could make such a contract—it cannot be said as a matter of law that they did not apparently have such authority. The principles relating to apparent authority are thus stated in the Restatement of the Law of Agency: 'A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are

incidental to transactions which he is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that the agent is not so authorized': P. 161."

See also East Girard Savings & Loan Association v. Houlihan, 373 Pa. 578, 580.

Under the circumstances of this case, plaintiff had a right to infer that the trustees had full authority "to conclude deal", to "purchase the ground" approved by the local union, and that defendant is liable for their acts, it being a general principle of agency that where one has so clothed its agents with authority to act as to mislead or deceive another, that where one of two innocent parties must suffer loss by act of the third, he who clothed the wrongdoer with the power to injure must himself bear the loss. See Grotfend and Rebecca Remaley v. Valley Laundry Company, 88 Pa. Superior Ct. 510, 515; Fay v. Deady, 82 Pa. Superior Ct. 187, 190.

We have considered all the other reasons advanced by counsel for defendant local union, for judgment n. o. v. and for a new trial; for judgment on point reserved, and that the verdict was against the weight of the evidence and the law, although many of these reasons were not briefed or argued by defendant. We believe all issues of fact were properly submitted to a jury, and that the verdict should not be set aside.

Accordingly, we enter the following order:

### Order

And now, September 28, 1954, this matter came on to be heard, and after due consideration thereof, it is ordered, adjudged and decreed:

1. That defendant's motion for judgment on point reserved is overruled and dismissed;

2. That defendant's motion for judgment n. o. v. is overruled and dismissed, and

3. That defendant's motion for a new trial and stay of proceedings is overruled and dismissed.

*Final Judgment*

Now, October 12, 1954, on præcipe this day filed judgment is entered in favor of plaintiff and against defendant in the sum of $12,401.85, with interest from December 15, 1953, together with costs of suit and attorney's commission. Judgment entered accordingly.