**ROADWAY EXPRESS, INC., Plaintiff,**

v.

**GENERAL TEAMSTERS, CHAUFFEURS AND HELPERS UNION LOCAL 249, Defendant.**

**Civ. A. No. 61–616.**

United States District Court
W. D. Pennsylvania.

Dec. 19, 1962.

Jack J. Rosenberg, Pittsburgh, Pa., for plaintiff, Roadway Express, Inc.

Ben Paul Jubelirer, Joseph Maurizi, Pittsburgh, Pa., for defendants.

DUMBAULD, District Judge.

Under Section 301 of the Taft-Hartley Act, 29 U.S.C.A. § 185, and the "judicial inventiveness" doctrine of Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 923, 1 L.Ed.2d 972

(1957), plaintiff motor carrier sues a local of the teamsters' union for alleged violation of a no-strike provision in an alleged labor contract. The motion to dismiss is based on the ground that no contract existed.

From depositions and statements of counsel at the argument the facts regarding the dealings of the parties are clear and uncontradicted. The question is whether as a matter of law they constitute a contract.

In the first place it is conceded that this is not an industry where the principle of "no contract, no work" applies. It is customary for members of this union to continue work during negotiations for a new contract.

The strike occurred on August 8, 1961, when a driver refused to deliver a load without a helper, and the carrier treated this refusal as a resignation. On January 13, 1962, the carrier permanently closed its Pittsburgh terminal.

The contract previously in force expired at the end of May 31, 1961. Other carriers in the Pittsburgh area entered into a new contract effective June 1, 1961, negotiated between Teamsters Joint Council No. 40 (for and on behalf of Local 249 and eleven other locals) and a trade association of carriers, Western Pennsylvania Motor Carriers Association. But plaintiff before the negotiation of that contract (to wit on January 19, 1961, effective February 10, 1961) had withdrawn from the association and become an "independent".

Plaintiff was given a copy of a preliminary print of that contract (Ex. 47) and told that "independents" would have to accept the same terms. This draft contained a statement reserving to the Local Unions the right to bring up other matters for negotiation.

Moreover, plaintiff was also distinctly informed by Local 249 that before the union would enter into a contract there were certain matters that would have to be settled. These were controversies relating to the use of helpers, money allegedly due for helpers not used, and

an issue regarding an employee named Tylenda and several other matters involving disciplinary action.

Plaintiff contends that those matters were resolved on or about June 15, 1961, when an existing work stoppage which had begun on May 31, 1961 ceased, and work resumed.

Plaintiff contends that no later than that date there became operative a contract, by virtue of a telegram which plaintiff had sent to Local 249 at 7:07 P.M. on June 1, 1961 reading as follows:

"This is notice that Roadway Express Inc Pittsburgh Pa accepts the terms of the new labor contract as negotiated by the Western Pennsylvania Motor Carriers Assn. to be come [sic] effective June 1 1961."

Did this unilateral acceptance by plaintiff of the terms of a contract which was *res inter alios acta* create, either when sent and received or when other issues in dispute had been settled, a contract between plaintiff and Local 249?

No formally executed written and signed contract has ever been entered into between plaintiff and Local 249.

■■ We conclude that no contract existed. A contract requires the assent of both parties. It is clear that the Union did not consider that it would consider itself bound until a Memorandum of Understanding was signed. Moreover, negotiations on disputed issues continued after June 15, 1961, (and indeed into 1962) without reaching agreement.

In support of our conclusion we may avouch the general principles of contract law, requiring mutual assent to establish the existence of a contract. Williston on Contracts, § 28A; Whitemarsh Tp. Authority v. Finelli Bros., Inc., 408 Pa. 373, 378, 184 A.2d 512 (1962).

■ Secondly, we believe that the peculiar features of labor contracts emphasize the need and the importance of formal execution. Writers on labor law have emphasized that labor contracts are a form of diplomacy or statecraft

rather than routine contracts. Often vague or meaningless language is used in labor contracts because greater precision might obstruct rather than promote conciliation and agreement. Harry Shulman, "Reason, Contract, and Law in Labor Relations", 68 Harvard Law Review 999, 1004 (1955). As Napoleon is said to have said of the Louisiana Purchase, if there are no ambiguities in the treaty perhaps it would be well to insert a few. Henry Adams, History of the United States, II, 43. In other words, a labor contract is an exercise in the art of public relations rather than in the art of logical reasoning and legal definition.

The execution of a labor contract is often a matter of "face", of prestige, of dramatic and ceremonial interest. The chief negotiators often appear as television figures. The theatrical staging of the actual signing is often publicized in a manner similar to the President's signing an important Act of Congress, although apparently no pens are distributed as souvenirs of the occasion when a labor agreement is consummated.

Hence the peculiar characteristics of labor contracts confirm the general rule of contract law that no contract was created under the circumstances of the case at bar in the absence of formal execution. H. J. Heinz Co. v. N.L.R.B., 311 U.S. 514, 523–526, 61 S.Ct. 320, 85 L.Ed. 309 (1941).

■ Thirdly, we attach importance to the fact that in this industry the principle of "No contract, no work" is not practiced. Hence the circumstance that work was resumed on June 15, 1961, does not have probative force with respect to the existence of a contract. Similarly the fact urged by plaintiff that certain grievances were processed in the manner that would have been prescribed by the contract if it had been in force is not persuasive as to the existence of the contract.

Accordingly the motion to dismiss should be granted. We do not pronounce upon other issues urged by defendant, such as whether under General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 298 F.2d 341 (C.A. 6, 1962), the complaint is unmeritorious *vel non.*