**UNITED STEELWORKERS OF AMER-ICA, Plaintiff,**

v.

**RELIANCE UNIVERSAL, INC. and Reliance Universal Inc. of Ohio, Defendants.**

**Civ. A. No. 64–007.**

United States District Court
W. D. Pennsylvania.
March 19, 1964.

844

· Phillip Scheiding and Emil E. Narick, Pittsburgh, Pa., Feller, Bredhoff & Anker, Washington, D. C., for plaintiff.

Thorp, Reed & Armstrong, Pittsburgh, Pa. (Charles C. Hewitt and Eli Krivoshia, Jr., Pittsburgh, Pa.), for defendant.

DUMBAULD, District Judge.

This is an action brought by a labor union under Section 301 of the Labor-Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185. That section provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The natural meaning of this language is simply to create a federal forum, dispensing with the usual jurisdictional amount and diversity of citizenship requirements. One would naturally expect that under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), State law would apply to litigation brought into the federal forum by virtue of this provision. Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corporation, 348 U.S. 437, 442, 75 S.Ct. 489, 99 L.Ed. 510 (1955).

Subsequently, however, in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), the Supreme Court held that by the exercise of judicial ingenuity federal courts should fashion the substantive law to apply in suits under Section 301(a) "from the policy of our national labor laws".

In the exercise of this ingenuity, plaintiff here asks us to decide that defendant corporations are violating a contract between plaintiff and the predecessor employer from whom defendants acquired the concrete pipe plant in question.

On September 28, 1962, plaintiff entered into a labor contract with Martin Marietta Corporation regarding the

Bridgeville plant, located within the jurisdiction of this Court. By its terms the contract was to run until July 31, 1964. On March 12, 1963, the Federal Trade Commission issued an order requiring Martin Marietta Corporation to divest itself of various concrete pipe plants, including the Bridgeville plant, for antitrust reasons. The plant was then purchased by defendant, Reliance Universal Inc., formerly known as Reliance Varnish Company, a Kentucky corporation, whose subsidiary, defendant Reliance Universal Inc. of Ohio, an Ohio corporation, now operates the plant.

Defendants have at all times disclaimed any intention of being bound by the terms of the labor contract with the predecessor employer.

We are asked, in substance, by plaintiff to hold that a labor contract is analogous to a covenant running with the land; that it binds new employers taking over a plant covered by a labor contract. By another analogy, the labor contract would be likened, under plaintiff's view, to a price-fixing agreement (sometimes erroneously designated as a "fair-trade" agreement) binding a non-signer.

With respect to such price-fixing agreements, however, it should be noted that they become binding on non-signers only by virtue of specific legislative provisions; and indeed the general tendency of the courts seems to be to declare such attempts to bind non-signers unconstitutional as denying due process of law.[1]

The question really becomes one of police power. If conditions exist warranting the State in burdening the non-signer with certain requirements, then the existence of a contract between other parties can properly be designated as the operative fact triggering such liability. But this pre-supposes that grounds exist which would warrant imposition of such a burden in the public interest under the police power.[2] Furthermore, as has been stated, the entire matter is one dependent upon the existence of statutory enactments.

In the case at bar our attention has not been directed to any provision of legislation by Congress which would warrant the conclusion that labor contracts are binding upon new employers not a party thereto.

■ Of course, the new employer would be subject to the provisions of federal labor legislation regarding its duty to bargain with its employees. But just as it would not be bound to operate the plant under the new management with the same employees who worked there before,[3] similarly it would not be bound to continue in effect the provisions of any labor contract entered into on behalf of such employees with the former employer.

■■ While it is true that labor contracts have peculiar features distinguishing them in some respects from ordinary contracts, nevertheless Congress has seen fit to adopt the concept of "contract" as the vehicle or instru-

1. See Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 386–390, 71 S.Ct. 745, 95 L.Ed. 1035 (1951)]. What the Court there says (341 U.S. p. 390, 71 S.Ct. p. 748, 95 L.Ed. 1035) might be said, *mutatis mutandis*, of labor contracts: "Certainly the words used connote a voluntary scheme. Contracts or agreements convey the idea of a cooperative arrangement, not a program whereby recalcitrants are dragged in by the heels and compelled to submit to price fixing [*lege* collective bargaining agreements which are *res inter alios actae*]".

2. *Production and distribution of milk*, for example, are so intimately related to public health and welfare that price regulation is justified by the police power. *H. P. Hood & Sons v. DuMond*, 336 U.S. 525, 529–530, 69 S.Ct. 657, 93 L.Ed. 865 (1949); *Nebbia v. New York*, 291 U.S. 502, 525–529, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

3. Except, of course, where legislation specifically provides for job protection, as in case of railroad mergers. See 49 U.S.C. § 5(2) (f); *Railway Labor Executives' Ass'n v. United States*, 339 U.S. 142, 155, 70 S.Ct. 530, 94 L.Ed. 721 (1950); *Brotherhood of Maintenance of Way Employes v. United States*, 366 U.S. 169, 172, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961).

mentality for regulating labor relations. A consequence of this is that the general principles of contract law do apply to such agreements. Roadway Express, Inc. v. General Teamsters, etc., 211 F. Supp. 796, 797 (W.D.Pa.1962). And one of the basic essentials of a contract is that there be parties thereto, capable of contracting regarding the subject matter involved. The Supreme Court has said that "the ingredients of a contract are parties, consent, consideration, and obligation". Farrington v. Tennessee, 95 U.S. 679, 685, 24 L.Ed. 558 (1877).

Plaintiff emphasizes as a reason why the contract should "run with the plant" the circumstance that the new employer is conducting the same type of business as the former operator. Plaintiff concedes that the rule for which it contends would not apply if the premises were used by the new purchaser for a different type of business, such as the manufacture of chocolate candy. However, this continuity in the nature of the business enterprise being conducted in the plant does not seem to furnish ground for fastening upon the new employer the terms of a contract made by a previous operator.

Conceivably, a business might have been sold for the very reason that the onerous terms of an existing labor agreement made the business unprofitable to such an extent that the owner was unable to continue in business. Under such circumstances the doctrine of covenants running with the plant would simply perpetuate existing evils, with the likelihood of repeated receiverships, bankruptcies, and consequent unemployment and economic instability.

Moreover, a new employer taking over operation of a plant would not be bound by the predecessor operator's contracts regarding raw materials, supplies, purchased services, and other expenses of the business affecting his costs of operation; and it would seem anomalous if, with regard to one item of expense, namely labor, a different rule were to apply. In many industries labor costs constitute a substantial proportion of the total costs of operation.

Plaintiff also points to the circumstance that a labor contract differs from other contracts, in that dissenting employees are bound by the results of the collective bargaining process. However, this is a specific consequence of the legislation in force, and also results from general agency principles. The union is regarded as the bargaining agent of the employees. Naturally, they are bound by the contract agreed upon, just as the stockholders of a corporate employer are bound by the labor contracts concluded by the duly authorized management of the company.

We have not found any directly controlling authorities. But Isbrandtsen Co. v. Local 1291, 204 F.2d 495, 496 (C.A. 3, 1953) seems to point towards the view that only parties or direct beneficiaries of a labor contract may sue for violation thereof under 29 U.S.C. § 185.

In short we find that the doctrine advocated by plaintiff is such a complete innovation that it cannot be regarded as a feature of federal common law under 29 U.S.C. § 185, but must await adoption through the legislative sanction of Congress.

### ORDER

And now, this 19th day of March, 1964, after argument,

It is ordered that defendant's motion to dismiss be, and the same hereby is, granted, and that the complaint herein be, and the same hereby is, dismissed; and that plaintiff's motion for summary judgment be, and the same hereby is, denied, and that the counter-claim of defendant, Reliance Universal Inc. of Ohio, be and the same hereby is, dismissed.