## Landreth *v.* First National Bank of Philadelphia, Appellant.

Argued January 6, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Wm. Barclay Lex,* with him *Hepburn & Norris,* for appellant.

*Symington P. Landreth, Jr.,* with him *Bertram P. Rambo,* of *Rambo, Rambo & Knox,* for appellee.

OPINION BY MR. JUSTICE PARKER, March 22, 1943:

Burnet Landreth, Jr., borrowed from defendant bank $507.30 and pledged as collateral an insurance policy on his life, in Metropolitan Life Insurance Company, for $10,000. The policy on the death of insured was payable to his wife, Margaret M. Landreth, if then living, otherwise to his two children. The insured and beneficiaries made an assignment general in form on a blank furnished by the insurance company. At the same time they executed a paper prepared by the bank setting forth the conditions of the pledge.

Mr. Landreth died on October 4, 1941, and the sum of $10,150.90 was paid by the insurance company to the bank. The bank then appropriated $507.30 to the payment of decedent's note and applied the balance on account of notes of D. Landreth Seed Company approximating $120,000, for the payment of which Burnet Landreth, Jr., had become surety by two written agreements. The notes of the seed company were not due at the time of the death of Burnet Landreth, Jr.

The legal representatives of Burnet Landreth, Jr., tendered to the bank payment of the note for $507.30, and his widow brought this action to recover from the bank the balance received from the insurance company. The court below entered judgment against defendant for want of a sufficient affidavit of defense. Defendant has appealed. The judgment must be affirmed.

The rights of the parties are fixed by the writings which passed between them. The dispute arises from different interpretations of two contemporaneous papers fixing the terms of the pledge. The general assignment deposited with the insurance company authorized the payment of the policy to the bank. The contemporaneous paper was entitled "Agreement Regarding Life Insurance". It set forth that the general assignment did not "fully express the purposes for which it has [had] been made" and then provided, inter alia: "Now, therefore, it is hereby agreed as follows: 1. Said assignment shall

secure all indebtedness of any of the undersigned to the Bank as existing at the date of the death of the insured or at any time prior thereto. . . . 3. Any balance remaining after said indebtedness has been fully paid shall be paid by the Bank to the party or parties who would have been entitled to receive such amount from said insurance company had said assignment not been executed. No party interested in said policy shall, on account of the application of any of the proceeds of said policy on said indebtedness, have the right to contribution or reimbursement from any party or to be subrogated to the rights of the Bank in any other collateral."

"A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together": Restatement, Contracts §235 (c). So considering the agreements, the wife had an inchoate right in the policy liable to divestiture by her death before the insured or by change of beneficiary. The very words of paragraph 3 so provide, for when the bank was paid she was to remain in the same position as if the assignment had not been made. The proceeds did not constitute an asset of the estate of Burnet Landreth, Jr.: *Newman v. Newman,* 328 Pa. 552, 554, 196 A. 30. We are therefore dealing with a pledge of the plaintiff for a debt of her husband. This must be recognized in interpreting the contract. The pledge was to secure "indebtedness of any of the undersigned to the Bank *as existing at the date of the death* of the insured or at any time prior thereto."

Appellant first asserts that the contingent liability of Burnet Landreth, Jr., as surety for notes of Landreth Seed Company was such an indebtedness as was contemplated by the agreements and although none of those notes was due when Burnet Landreth, Jr., died, constituted an existing indebtedness at that time. Expressed in another way, it is contended that a possible future liability is a present indebtedness. Appellant also relies upon a provision in the note for $507.30 signed only

by Burnet Landreth, Jr., in part as follows: "Should any of the undersigned [Burnet Landreth, Jr.] die" or should certain other matters occur which are not pertinent here, "then immediately on the happening of any of said events, this obligation and every other debt or obligation of any of the undersigned to the holder hereof shall immediately become due and payable."

We deem the Assignment and the Agreement Regarding Life Insurance, when viewed in their entirety to disclose a clear intent to limit the pledge to security for indebtedness of the signers of those agreements which might be due at the date of the insured's death or prior thereto. Words are presumed to be used with a purpose in view. The notes of D. Landreth Seed Company were not an indebtedness of any of the signers of the Agreement Regarding Life Insurance and were not due when Burnet Landreth, Jr., died. The obligation of Burnet Landreth, Jr., as to those notes was that of a surety and he undertook to pay those notes only in the event that they were not paid by the Landreth Seed Company when due. On the death of Burnet Landreth, Jr., it was not known whether his assumption would ever ripen into a debt. The contract contemplated an existing indebtedness and not a mere possibility of future indebtedness. The word used was indebtedness, not contingent liability. It will be noted in passing that it is not averred in the affidavit of defense that there was a default by D. Landreth Seed Company when the notes did become due.

"While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened, the term debt being opposed to 'liability' when used in the sense of an inchoate or contingent debt": 26 C. J. S., p. 4. Here, moreover, there is a specific limitation to a present existing indebtedness as opposed to a future contingent liability.

A comparable conclusion has been reached in other jurisdictions. In *Severs v. Dodson,* 53 N. J. Eq. 633, it

was specifically held that an accommodation endorser of a promissory note is not a present debtor. Also, cf. *Sharpe v. First Nat. Bank of Antigo* (220 Wis. 506), 264 N. W. 245; *O'Connor v. Lape's Est.* (110 Vt. 217), 3 A. 2d 554.

Defendant's position is not aided by the omnibus clause in the Landreth note for $507.30. Such a clause, being on a printed form of the bank and a writing prepared by it, should be most strongly construed against the bank. The due dates of the notes of the Landreth Seed Company could only be accelerated by consent of the Seed Company. It was not the purpose of the clause to impose on Burnet Landreth, Jr., a liability greater than that of the Seed Company. We deem it to be clear that this clause, read with the pledge, did not make the obligation of the Seed Company a debt of Burnet Landreth, Jr., existing at his death, for which the plaintiff's property was security.

Judgment affirmed.