Mathewson v. Klein et al.

*Donald O. Coughlin* and *R. L. Coughlin*, for plaintiff.

*Fahey & Casper* and *Frederic R. Gallagher*, for defendants.

PINOLA, J., August 9, 1951.—Plaintiff brought this action to restrain an execution issued by defendants upon a judgment entered on the bond accompanying a mortgage given by plaintiff to defendants. He declares there was no default at the time the writ issued, but defendants insist that plaintiff was in default in the sum of $1,362.74 at the time.

The issue raised is simple. Was plaintiff in default under the terms of the mortgage on May 10, 1951?

From all the testimony, we make the following

## Findings of Fact

1. On June 30, 1950, plaintiff executed a bond and mortgage in favor of Alfred M. Klein and Alan S. Goodman, defendants, in the sum of $50,000 payable

in one year, with interest at six percent per annum. The mortgage covers property in the Borough of Exeter and the Borough of West Pittston, Luzerne County, consisting of 21 single dwellings, 3 double dwellings, 1 hotel and 1 farm.

2. The mortgage contains a covenant that interest is payable quarterly at the rate of six percent per annum.

3. While the mortgage requires production "on or before the first of July of each and every year, of receipts for all taxes and water rents of the current year assessed upon the mortgaged premises" the tax notices for the year 1950 were not issued in Exeter Borough until about July 28, 1950, and in West Pittston Borough until about September 15, 1950. In each case the one statement covers county, poor, school and borough taxes.

4. Plaintiff is only required to maintain fire insurance in the sum of $50,000 on the mortgaged premises.

5. From June 30, 1950, to and including May 10, 1951, $20,850 of insurance was in effect.

6. Prior to May 10, 1951, insurance totaling at least $29,150, the difference between that continuously carried and the $50,000 required under the mortgage, was canceled, but additional insurance was taken out by the mortgagees on March 22, 1951, in the sum of $77,500. They thus insured the mortgaged property over and above the required $50,000 by $48,350.

7. The premiums on insurance in force on June 30, 1950, had been paid, and from the policies canceled defendants received a refund of $96.47.

8. Additional fire insurance to make $50,000 required under the terms of the mortgage would be $29,150, costing only $57.42.

9. For the insurance taken out by the mortgagees to protect them, $204.88 was paid.

10. The funds received from the title company and Mr. Pope, totaling $2,679.61, were used to pay the first eight items listed in defendants' exhibit 1, totaling $2,849.10, leaving a deficit of $169.49.

The funds received from rent and insurance refund by defendants total $4,431.35. Deducting therefrom the deficit of $169.49, left a balance of plaintiff's funds in the hands of defendants amounting to $4,261.86. These were used to pay the following: Interest, three quarters, $2,250; taxes, $1,527.93; insurance, $471.59; total, $4,249.52; leaving a balance in favor of plaintiff of $12.34.

Besides, because defendants had purchased excessive insurance with funds of plaintiff amounting to $147.46, plaintiff was entitled to a credit in that amount on May 10, 1951.

11. Defendants in their affidavit declared the default as follows:

| | |
|---|---|
| Interest to March 30, 1951 | $2,250.00 |
| 1950 taxes | 1,808.42 |
| Insurance | 378.71 |
| Costs | 6.00 |
| | $4,443.13 |
| Credits: | |
| Rents collected | $1,658.14 |
| Insurance rebate | 96.47 |
| | $1,754.61 |
| Total sum due | $2,688.52 |

But in the account attached to the answer, the deficit is only $1,362.74.

12. On June 30, 1950, Alfred M. Klein and Alan S. Goodman, as individuals, but the same persons as the mortgagees, entered into an agreement with Ralph C. Mathewson, as an individual, but the same person as the mortgagor, wherein Klein and Goodman were appointed agents and attorneys-in-fact for the collection of all income from the mortgaged premises with pro-

vision for the application of the income, Klein alone being employed as attorney-at-law generally.

13. The agreement of June 30, 1950, appointing Klein and Goodman as agents and attorneys-in-fact and Klein as attorney-at-law, contains no provision altering or enlarging the obligation of the bond and mortgage.

14. The bond and mortgage contains no provision integrating the agreement of June 30, 1950, appointing Klein and Goodman agents and attorneys-in-fact and Klein as attorney-at-law.

15. Neither the bond and mortgage nor the agreement of June 30, 1950, appointing Klein and Goodman agents and attorneys-in-fact and Klein as attorney-at-law, contains any provision making a default in such agreement a default of any of the covenants of the bond and mortgage.

16. The mortgagees went into possession of the mortgaged premises on April 5, 1951.

17. The mortgagees in possession collected $1,200 of $2,400 on account of back rental due prior to the time of their possession, from tenant, Nick Belfanti and released him for the balance.

18. After April 5, 1951, the mortgagees in possession collected no current rent.

19. Rentals due for properties occupied for the months of April and May totaled $1,176.

20. No testimony was given and no reason or excuse was offered by the mortgagees in possession for their failure to collect rents from April 5, 1951.

21. Under the terms of the agreement, the mortgagees were to apply the rents collected in the following order of priority: To the payment of interest, to the amortization of principal, to payment of taxes, water and or sewer rents, and to the maintenance of the properties.

22. The appraisal of Howell & Jones is not complete in that it does not include the appraisal of the hotel property occupied by Nick Belfanti.

## Discussion

Although the issue is simple, several very interesting problems have arisen in this case.

Contemporaneously with the execution of the bond and mortgage, the parties entered into an agreement referring to the bond and mortgage, in which the mortgagor appoints the mortgagees as his sole and exclusive agents to collect rents and sell properties for a commission of five percent, and defendant Klein, who is a lawyer, is engaged to perform legal services generally for the sum of $1,500 for the duration of the mortgage, to wit, one year, payable in 12 equal installments.

Since the bond and mortgage and the agency agreement form part of the same transaction, they must be interpreted together: Landreth v. First National Bank of Philadelphia 346 Pa. 551; Wilson v. Viking Corporation et al., 134 Pa. Superior Ct. 153; and Penn Securities Co. v. Sacco, 41 Luz. 17.

While it is true that in paragraph 5 the parties have agreed that defendant Klein is to receive $125 per month from the rents, the parties had, in paragraph 1, expressly provided an order of priority in the application of the rents collected as follows: To the payment of interest, to the amortization of principal, to the payment of taxes, water and/or sewer rents, and to the maintenance of the properties. No reference whatsoever is made to the counsel fees, and hence they must follow this group to which the parties have given priority.

Although the parties agreed that the counsel fees should be paid from the rents, they did not secure the

performance of that agreement by the mortgage and the accompanying bond, and therefore, the terms, conditions and provisions contained in the bond and mortgage control in ascertaining the amount due thereunder.

Even if the mortgage and bond had been made to secure the payment of counsel fees, we nevertheless would not be permitted to consider them, because in their affidavit of default defendants made no reference whatsoever to such fees. In any event, in determining whether default existed on May 10, 1951, we must exclude the claim for counsel fees.

While under the collateral agreement defendants had a right to apply the rents collected after payment of the interest, to the amortization of principal, they did not do so. They chose instead to pay the taxes. This appears from the account attached to the answer, as well as in the affidavit of default. Having so applied the money, they are bound by their action.

On April 5, 1951, defendants, as mortgagees, entered into possession of the premises and on the same day settled an outstanding claim for rent against Nick Belfanti for $1,200. They did not, however, collect any more rent up to the date of execution. Plaintiff insists that in the absence of any explanation, defendants, as mortgagees, should be surcharged the amount of these rents and to be considered as having received on the date of default, $1,176, for rents which they should have collected during the months of April and May.

The mortgagees' possession is not only for their own benefit, but for the benefit of the mortgagor as well, and therefore, they are generally regarded as constructive trustees, being subject to an accounting to the mortgagor: David Oil Co., v. Fogle, 354 Pa. 150; Winthrop v. Binns, Inc., 160 Pa. Superior Ct. 214. As

such, they are bound to manage the property in a reasonably prudent and careful manner.

"They are bound to account not only for what they actually received but also for what they should and could with reasonable care and attention have received: Spring Brook Railway Company v. Lehigh Coal & Navigation Company, 181 Pa. 294, 307.

Defendants claim that plaintiff was in default in the payment of taxes. The mortgage specifically provides that: "on or before the first of July of each and every year" receipts for taxes for "the current year" are to be produced. This mortgage was drawn in Philadelphia, where taxes are payable early in the year. In both Exeter Borough and West Pittston Borough, taxes are payable in the fall of the year and notices are not sent out until July or August. The bond and mortgage were dated June 30, 1950, so it was physically impossible for the plaintiff to produce the tax receipts for the year 1950 on or before July 1, 1950. The only construction which we can give to this requirement, and one which we believe is reasonable, is that the parties intended that the tax receipts for 1950 should be produced on or before July 1, 1951. So the plaintiff was not in default in this respect.

Plaintiff claims that defendants expended his money unnecessarily for their own protection in connection with fire insurance.

On March 3, 1951, considerable fire insurance was canceled by the insurers. However, insurance in the amount of $20,850 remained. The mortgage required the mortgagor to carry insurance in the sum of $50,000. Instead of purchasing $29,150 additional insurance, defendants, on March 22, 1951, purchased insurance in the sum of $77,500, thus exceeding the amount required by $48,350. In effecting this insurance they spent $204.88. Had they purchased only $29,150 insurance, the cost would have been only $57.42. This

they did, they claim, in the performance of "the duties of provident owners."

Had the defendants purchased insurance which enured to the benefit of the mortgagor, as well as to them, they might be justified. However, the insurance which they purchased protected themselves alone. In purchasing that type of insurance they are limited to the sum of $29,150, the amount required to give them full protection under the mortgage provision. Since this would have cost only $57.42, we hold that on the date of the default they had in their possession funds of the plaintiff amounting to $147.46.

From the facts, we reach the following

### Conclusions of Law

1. Plaintiff was not in default on May 10, 1951.

2. Defendants were not entitled to foreclose on the bond and mortgage.

3. The execution must be stayed.

Accordingly, we enter the following

### Decree Nisi

Now, August 9, 1951, it is ordered, adjudged and decreed:

1. That the execution issued by defendants against plaintiff to July term, 1951, no. 30, upon judgment entered to July term, 1951, no. 413, be and the same is hereby stayed.

2. All costs to be paid by defendants.

The prothonotary shall enter this decree nisi and give notice to the parties, or their counsel of record, of the entry of the decree, and if no exceptions are filed within 10 days, this decree nisi shall be entered as the final decree herein by the prothonotary, as of course.