**INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK & DISTILLERY WORKERS OF AMERICA, AFL–CIO and its Joint Executive Board, Pittsburgh and Vicinity, Representing Locals Nos. 22, 67 and 144, and Machinists Local Union 1060, by Regis Chenot and James Elnyczky, Trustees ad Litem, Plaintiffs,**

v.

**DUKE & COMPANY, INC., Defendant.**

**Civ. A. No. 72–951.**

United States District Court,
W. D. Pennsylvania.

April 9, 1974.

David Rainero, Pittsburgh, Pa., for plaintiffs.

Richard I. Thomas, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

This is a suit for damages by labor unions on behalf of their members for breach of a Collective Bargaining Agreement by defendant employer. Jurisdiction is founded on 29 U.S.C. § 185(a).

Both parties have moved for summary judgment and have entered into an extensive set of stipulations as to the truth of facts stated and the correctness and genuineness of documents presented. The defendant Company proffers all of these facts and documents as relevant and material to the issues; the plaintiffs object to the relevancy and admissibility of some of the facts and documents as to the issue here presented.

We conclude from our examination of the offered evidence that there is no genuine issue as to material facts and that judgment may be rendered as a matter of law.

It is the plaintiffs' contention that those employees who had satisfied the eligibility requirements for certain types of pension benefits are guaranteed those benefits by the Collective Bargaining Agreement between the parties despite the cessation of operations, the closing of the plant and the dismissal of the employees. In support of this claim the plaintiffs argue that the only relevant evidence in the case is the Collective Bargaining Agreement between the parties at the time of the closing, and its predecessor agreements.

The defendant Company contends that the Collective Bargaining Agreements do not provide any guarantee and that the rights and obligations of the parties, particularly upon the event of termination of the Pension Plan, are determined by the Pension Plan, a separate document from the Collective Bargaining Agreements. In support of defendant Company's contention it offers certain agreed facts and documents, to which plaintiffs object on the grounds of relevancy, more particularly under the parol evidence rule.

Defendant asserts that the proffered evidence, apart from the Pension Plan itself, is offered not to alter, vary, or contradict the terms of the Collective Bargaining Agreement, but as evidence that the terms of the Collective Bargaining Agreement pertaining to pension benefits must be read together with the Pension Plan to determine the issue of whether a guarantee of pension benefits survives the termination of operations.

After many years of operation the Company, then known as the Duquesne Brewing Company of Pittsburgh, shut down its brewery and ceased operations on December 8, 1972. While a Collective Bargaining Agreement was in effect at the time there is no contention in the present case that the Agreement required the Company to continue brewery operations during the term of the Agreement. The 1972 Agreement, Sec. 30, recognizes this:

> "Nothing in this contract or otherwise shall in any way obligate the company to continue the Brewery operations at any time, if in the sole opinion of the management said operation must be shut down."

Members of the work force covered by the Collective Bargaining Agreement were permanently separated from employment on the date of the shut-down, have been paid earned but untaken vacation benefits for 1972; and have been paid lump sum severance allowance in accordance with the terms of the Collective Bargaining Agreement.

On December 8, 1972, the date of the shut-down of the brewery, the defendant Company terminated the Pension Plan in accordance with the provision of the Pension Plan allowing for termination by the Company at any time.

At the date of the shut-down and termination of the Pension Plan there were 147 employees who had achieved the requisite age and years of service to be eligible for Early Retirement, 103 employees for a Deferred Pension, and one for a Normal Pension, under the terms of eligibility provided in the Collective Bargaining Agreement. They had not retired on the date of the shut-down and the defendant Company refused to process their applications for pension benefits. It is on their behalf that this suit is brought.

The plaintiffs' action is based on a provision of the Collective Bargaining Agreement in effect at the time of the shut-down, as follows:

Sec. 23

"Pensions (a) The Employer shall continue a pension plan financed solely by the Employer which shall provide pensions as follows:"

(The following provisions set forth the amount of pension that Employer "shall provide" for employees of various ages and lengths of service, or for disability, and various other conditions of eligibility).

The plaintiffs' contention is that the language of the Collective Bargaining Agreement is clear and unambiguous, that it requires no extrinsic evidence to aid in its interpretation, and that it creates an unconditional obligation upon the Company to provide for pensions for those employees who have met the age and service requirements established in the Collective Bargaining Agreement. Plaintiffs further argue that no provision in the Collective Bargaining Agreement makes the pension rights dependent upon the continued operation of the plant.

Defendant relies on the termination provisions of the Pension Plan, and proffers evidence to prove that the Pension Plan must be read together with the Collective Bargaining Agreement to determine its pension obligations.

■ The substantive law to be applied in suits under the Labor Management Relations Act, 29 U.S.C. § 185, is federal law, which the courts must fashion from the policy of our national labor laws, resorting to general contract principles and state law to find the rule that will best effectuate the federal policy. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 [1957].

The admissibility of evidence in the federal courts is governed by Rule 43(a) of the Federal Rules of Civil Procedure.

"(a) Form and Admissibility. . . . All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. . . ."

Plaintiffs argue that because the language of the Collective Bargaining Agreement is clear and unambiguous on its face, no parol evidence of the meaning which the parties gave to the unambiguous wording is admissible in evidence. This is rule of evidence of general appli-

cation; Restatement, Contracts, Sec. 237–244; Williston, Contracts [3rd Ed. 1966] Sec. 631–47; it is the law of the state where this federal court sits, Gianni v. Russell, 281 Pa. 320, 126 A. 791 [1924]. It has been declared to be not a rule of evidence but a rule of substantive law, O'Brien v. O'Brien, 362 Pa. 66, 66 A.2d 309, 10 A.L.R.2d 714 [1949].

The rule is riddled by many exceptions (see McCormick, Evidence, pp. 426–454 [1954]), and its origins may be laid in many instances to the ancient veneration paid to a written document over oral statements, and the fear of the courts that juries may be too easily led astray by oral testimony contradicting the writing.

The federal courts have rejected parol testimony of the history of collective bargaining negotiations in construing the terms of a written collective bargaining agreement.

"We think that ordinarily the language of the contract as finally agreed upon must be construed by the courts in accordance with ordinary rules of construction without reference to the give and take of the bargaining sessions which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract." (p. 477) NLRB v. Gulf Atlantic Warehouse Co., 291 F.2d 475 [5th Cir. 1961]

■ However, the parol evidence rule is not applied to exclude such extrinsic evidence as may be incorporated by reference in the written document under consideration. In construing the Collective Bargaining Agreement in question here and its predecessors we find clear references to another document.

The 1951 Collective Bargaining Agreement between the parties recited:

"Pensions: (a) The Employer shall *establish* a Pension Plan financed solely by the Employer . . .". (emphasis supplied)

(continued by the amounts of pensions for various ages and lengths of service).

and also

"(h) The details of the pension plan, other than those specified above, shall be settled by agreement between the parties and by arbitration should they fail to agree."

and

"(j) The Pension Plan shall be inaugurated as soon as possible after approval by the Wage Stabilization Board, the U. S. Treasury Department, and the stockholders of the employer where necessary. . . . The parties agree to cooperate in good faith to secure all necessary approvals of said Pension Plan."

The language of the 1972 Collective Bargaining Agreement in effect at the time of the shut-down contained slightly different language.

Sec. 23. Pensions

"A. The Employer shall *continue* a pension plan financed solely by the Employer . . .". (emphasis supplied).

The provisions of the 1951, Sec. (h) of Article 23 referring to the working out the details of the pension plan has been omitted from the Collective Bargaining Agreement since the 1957 contract, as has the language of the 1951 Sec. (j) calling for submission of the plan for approval by the U. S. Treasury Department.

The reference to approval of the United States Treasury Department makes it apparent that the Collective Bargaining Agreement did not embody the entire Pension Plan, because the provisions of the Collective Bargaining Agreement relating to pensions would not satisfy the statutory requirements of an approved pension plan under 29 U.S.C. § 401(a), particularly in regard to the prohibition against revesting contributions in the employer.

■ We find these references sufficient to establish the existence of a separate contemporaneous agreement on the subject of the Pension Plan.

The federal courts look to the existence of separate agreements which should be integrated in construing the intention of the parties. We note particularly the absence in the Collective Bargaining Agreement of any provisions with respect to the important matters of funding, administration or termination of the plan.

A Pennsylvania rule of integration is illustrated in International Milling Co. v. Hachmeister, Inc., 380 Pa. 407, 110 A.2d 186 [1955],

"Nor is there any requirement that a contract be evidenced by a single instrument. If contracting parties choose, they may express their agreement in one or more writings and in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of the true intent of the parties. Housing Mortgage Corp. v. Allied Construction, Inc., 374 Pa. 312, 319, 97 A.2d 802. And, where it can be shown by competent evidence that no single writing embodied or was intended to embody the whole of the parties' understanding, the parol evidence rule has no application: Rekas v. Dopkavich, 362 Pa. 292, 297–298, 66 A.2d 230." (pp. 417–418, 110 A.2d p. 191).

.    .    .    .    .    .

"In Calderoni v. Berger, 355 Pa. 418, 421, 50 A.2d 332 . . . Speaking for this court, Mr. Justice *Stearne* declared that, ' . . . it is clear that the parties did not intend the written bailment lease to constitute the final and complete contract between them . . . There was an interrelation between the writings and the parol testimony which required the action of the jury to determine what was the contract between the parties . . . ' " (pp. 418–419, 110 A.2d at pp. 191–192).

The same determination of controlling Pennsylvania law was made by the Court of Appeals for this Circuit in Chicago Pneumatic Tool Co. v. Ziegler, 151 F.2d 784, 795 [3rd Cir. 1945]:

"It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together. Wilson v. Viking Corporation, 134 Pa.Super. 153, 3 A.2d 180; Landreth v. First Nat. Bank, 346 Pa. 551, 31 A.2d 161. See also Restatement, Contracts, Section 228, discussing the principles of integration of contracts."

■ Even in the case of evidence which would be barred by a state exclusionary rule the federal courts are not bound. In Treharne v. Callighan, 426 F.2d 58 [3rd Cir. 1970], the court was faced by the objection that the introduction of the answers to interrogatories made by a defendant who died before the commencement of trial would be barred by the Pennsylvania Dead Man's Statute, 28 Pa.Stat.Ann. § 327. The court held that such evidence was nevertheless admissible under the provisions of Fed.R.Civ.P. 43 which governs the admissibility of evidence in civil actions tried in the United States District Court. See also United States v. 60.14 Acres of Land, 362 F.2d 660 [3rd Cir. 1966]; Rain v. Pavkov, 357 F.2d 506 [3rd Cir. 1966].

■ The Company has also proffered evidence which the Plaintiffs admit as true but to which they object on the grounds of the parol evidence rule, that plaintiffs had actual knowledge of the entire contents of the Pension Plan and knew that the Plan contained a termination provision, and its assets were insufficient to pay all maximum benefits if the company discontinued operations and made no further contributions. The Unions examined the annual reports of the

Pension Trust which were required to be filed with the Department of Labor. This evidence is undisputed and is otherwise competent for establishing the fact that the terms of the Collective Bargaining Agreement did not represent the entire obligation of the parties with respect to pensions and that it must be read in conjunction with the Pension Plan.

This factor was considered in Gallo v. Howard Stores Corporation, 145 F.Supp. 909 [E.D.Pa.1956], affd. per curiam 250 F.2d 37 [3rd Cir. 1957], where the court found the plaintiff bound by the terms of the master contract governing the retirement plan, which he had never examined, because it was evident to a reasonable man that such a contract was in existence. The Company was not estopped by its issuance of a summary booklet explaining pension terms in simple language which did not set forth the condition under which the plaintiff was denied a pension.

In a case of a situation similar to the instant one, involving the administration of a Retirement Fund upon the closing of a plant, the court held, on summary judgment, that the employees were chargeable with notice of the provisions of the Retirement Fund, and that these provisions controlled.

> "If, indeed, as appellants suggest, the Fund was an important part of their employment, it cannot reasonably be suggested that they would not have knowledge of the fact the Fund agreement had removed administration of the plan from USW control." Knoll v. Phoenix Steel Corp., 465 F.2d 1128 [3rd Cir. 1972].

Defendant company has proffered evidence that in the 1969 bargaining negotiations the Union proposed by letter a change in the language of the Collective Bargaining Agreement to accomplish a guarantee of pension benefits to all employees who met the age and service requirements for vesting. This was rejected by the Company and not incorporated into the 1970 contract. We reject this evidence as supportive of the Company's interpretation of its obligation or rights to terminate because of the well-established doctrine of excluding evidence of the give-and-take of bargaining negotiations in construing a collective bargaining agreement.

Plaintiffs argue that the court should not consider the terms of the Pension Plan because they are not parties or signatories to it, nor to the Trust Agreement between the Company and State Mutual Life Insurance Company which administered it. The Pension Plan is in the form of a deed poll executed by the Company's President and Secretary in accordance with a restriction of its Board of Directors in 1952. It forms part of a trust agreement executed between defendant Company and State Mutual Life Insurance Company. The Pension Plan document recites that the Company "hereby adopts the following Pension Plan for the benefit of employees of the Corporation hereinafter defined . . .". The trust agreement with the insurance company binds the Defendant Company to make payments to the insurance company to fund the liabilities of the Defendant Company under the Pension Plan.

We, therefore, conclude by virtue of the extrinsic evidence, that no single instrument, such as the collective bargaining agreement was intended to embody the whole of the parties' understanding as to the Pension Plan. Consequently, the parol evidence rule has no application. Rekas v. Dopkavich, cit. supra; International Milling Co. v. Hachmeister, cit. supra.

This principle has been employed by the federal courts in their interpretation of collective bargaining agreements.

In American Fed. of Labor v. Western Union Tel. Co., 179 F.2d 535 [6th Cir. 1950], an employer tried to defeat federal jurisdiction on the grounds that the pension plan was not part of a labor contract, over which the court had jurisdiction under 29 U.S.C. § 185. The labor contract contained language that during its existence the employer would not abandon or modify its existing pen-

sion plan without agreement of the parties. The court held the pension plan to be part of the collective bargaining agreement:

"The pension and benefit plan was in effect and operation at the time the collective bargaining agreements were executed, and these agreements expressly refer to the plan. It would be quite unreasonable in the circumstances which had been stated to assume that the appellant (Union) did not consider the benefit and pension plan as a part of its collective bargaining agreement. Where a contract makes reference to another agreement between the same parties in such fashion as to clearly import incorporation by reference, the contract and the pre-existing document should be read together and considered as one binding agreement or contract. (citations omitted). In the circumstances alleged in the complaint, it was entirely unnecessary that the benefit and pension plan be physically annexed to the collective bargaining agreements to make it an essential part thereof." (p. 538).

In Union Central Life Insurance Co. v. Hamilton Steel Products, Inc., 448 F. 2d 501 [7th Cir. 1971], where a question arose as to the amount of pension benefits owed as a result of employer's termination of operations by bankruptcy, the court concluded that it must consider three documents together, a collective bargaining agreement, a pension plan, and an annuity policy, because only the annuity policy contained provisions for disposition of the fund in the event of termination, and these provisions governed the matter in dispute.

In the present case it is the Pension Plan that provides the conditions of termination:

## "ARTICLE IX.

## AMENDMENT AND TERMINATION

*Section 901. Amendment and Termination.* The Plan may be amended or terminated by the Corporation, acting through its Board of Directors, at any time and from time to time, provided, however, that no such amendment or termination shall affect the pension benefits of Pensioners.

(Article I. Definitions. Sec. 106, provides "Pensioner" means an Employee who retires from employment with the Corporation and thereafter receives a pension under this Plan.)

The Pension Plan proceeds further with respect to the procedures to be adopted on termination:

*"Section 902. Procedure in Event of Termination.* In the event of termination of this Plan, the net assets of the Pension Fund shall be applied as follows:

(a) First, to provide guaranteed pensions for Pensioners by the purchase of annuities and the payment of all premiums thereon.

(b) Second, if any such assets remain, to provide pensions to the extent possible, for each Participant who has not commenced to receive a pension by the date of termination of the Plan, but who, under the provisions of Section 301 and Section 302 hereof, (i) has become eligible for a pension under this Plan, or (ii) has become eligible for a pension under this Plan except for retirement from employment with the Corporation.

If such remaining assets are not sufficient to provide the full amount of pension to which a Participant, who is described in (i) and (ii) of the preceding sentence would otherwise be entitled, the amount of such remaining assets shall be applied to purchase the pension which can be provided by the portion of such remaining assets which bears the same ratio to the total amount of such remaining assets as the Credited Service of each such Participant bears to the aggregate Credited Service of all such Participants.

(c) Third, if any such assets still remain, the same shall be distributed

among Participants (other than those already mentioned in this Section 902) who have Credited Service on the date of termination of the Plan, each such Participant receiving that proportion of the remaining fund that his Credited Service bears to the entire Credited Service for all such Participants who are not included in subparagraphs (a) and (b) of this Section 902, but it is expressly provided hereunder that any such share due to any such Participant shall be in the nature of a fully paid-up annuity, deferred to his Normal Retirement Date and in the amount that his share will fully purchase.

If the Pension Fund at termination is insufficient for the payment of premiums for the annuities for all Pensioners, as provided in sub-paragraph (a) above, the Corporation will thereupon make an additional contribution as required to pay fully all such annuity costs."

Nor do we find the above-cited provisions of the Pension Plan to be inconsistent with the terms of the Collective Bargaining Agreement. Only the Pension Plan contains provisions for termination of the Pension Plan, the continued requirement of contribution to the pension trust to fund the pensions of those who had already become pensioners, and the formula for distribution of any balance of the fund among employees. See Union Central Life Insurance Co. v. Hamilton Steel Products, cit. supra, p. 505.

Thus we do not find that the terms of the Pension Plan contradict, alter or vary any provisions of the Collective Bargaining Agreement.

In Boase v. Lee Rubber & Tire Co., 437 F.2d 527 [3rd Cir. 1970], a case not involving a labor contract under 29 U.S. C. § 185 jurisdiction, but a salaried employee's pension plan considered under diversity jurisdiction, the court examined the prevailing rule of the applicable state law on the effect of a termination clause:

"But the contract was not absolute; it contained 'conditions' among which was Lee's right to terminate the plan. This right, when duly exercised, constituted an operative condition subsequent which totally extinguished Lee's obligation under the Trust Agreement.

Thus, though appellants strenuously urge that, at least as to those appellants who had completed their employment, the conditions of the contract were fulfilled and Lee's obligations became absolute, no such 'express condition', Restatement, Contracts § 252, is to be found within the body of the instrument itself. In its absence, we may not supply such a condition. We may not rewrite the contract . . . .".

\* \* \* \* \* \*

"Lee reserved to itself in clear and unambiguous language formidable powers under Articles XII and XIII, and when it exercised those powers, Lee's obligations to make any additional payments terminated. These powers could be exercised at will. To interpret such an instrument is not to judge whether it was fair and equitable or harsh and unjust. It is for the court only to delineate what rights and privileges the signatories or the beneficiaries do or do not possess according to the terms contained within the four corners of the agreement." (pp. 532-533).

The court notes that termination arbitrarily or in bad faith will not be condoned, but that Lee's withdrawal from tire manufacturing showed the financial necessity of termination to negate any implication of bad faith.

■ The language of the Collective Bargaining Agreement that Employer "shall continue" its Pension Plan does not provide a guarantee of pensions. Like similar provisions in such contracts, it governs the rights and obligations of the parties so long as the employer-employee relationship exists. The

contract expressly provides for the right of Employer to cease operations:

> "The significance of it is that so long as an employer-employee relationship exists, the rights and obligations of the parties are governed by it."
>
> \*   \*   \*   \*   \*   \*
>
> "Employees' rights under such a contract do not survive a discontinuance of business and a termination of operations." (p. 856). Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853 [6th Cir. 1963].

See also Bakery & Confectionery Workers v. Great Atlantic & Pacific Tea Co., 357 F.Supp. 1322 [W.D.Pa.1973], affd. by order 3rd Cir. 1974, 491 F.2d 748; Schneider v. Electric Auto-Lite Co., 456 F.2d 366 [6th Cir. 1972].

The situation presented in the present case has arisen in a considerable number of instances recorded in cases reported in both state and federal court decisions. They uniformly hold that the rights, benefits and obligations arising out of the employment relationship are strictly controlled by the terms of the agreements which created them, that a collective bargaining agreement does not create a contract of employment but merely defines the conditions of the relationship while it exists, Fraser v. Magic Chef, supra, and that with respect to pension benefits,

> "Appellants' so-called rights in the pension fund were actually not rights at all, but were in the nature of expectancies, and as such were subject to the terms of the instrument under which they arose. The Pension Plan, under which they arose, expressly gave the company the right to amend or terminate, in whole or in part, the Plan at any time for any reason whatsoever. In acting under this expressly reserved power, the Company and the Trustee breached no legal rights of the appellants." (p. 413). Finnell v. Cramet, Inc., 289 F.2d 409 [6th Cir. 1961]

In reading the Pension Plan in the present case we note that, in all events except one, the liability to the employees and former employees is not that of the Defendant Company but of the Pension Trust. The liability of the Defendant Company prior to termination was defined in Art. VI, *Sec. 602, Contributions.*

> "The Corporation shall contribute annually to the Pension Fund amounts required to fund the liability of the Corporation for pension benefits on a sound actuarial basis. The aggregate of the annual contributions required *during each year of the Plan may be* determined and certified as of the effective date of the Plan and as of each anniversary date by one or more actuaries selected by, but independent of, the Pension Board (hereinafter referred to as the Actuary). An actuary otherwise qualified and employed by an insurance company which writes any insurance or annuity contract hereunder may serve as the Actuary."

It has been stipulated that this obligation has been satisfied as of the date of the plant's closing and the termination of the plan.

Thereafter, all of the obligations of payment of pensions under the Pension Plan are obligations of the Pension Fund created by the Pension Plan, with the sole exception of the following:

> *"Section 902. Procedure in Event of Termination.*
>
> \*   \*   \*   \*   \*   \*
>
> If the Pension Fund at termination is insufficient for the payment of premiums for the annuities for all Pensioners, as provided in sub-paragraph (a) above, the Corporation will thereupon make an additional contribution as required to pay fully all such annuity costs."

This is the sole remaining obligation of the Defendant Company. It has been stipulated that this has been satisfied.

Finally, it has been stipulated that neither parties desire the court to make a determination with respect to specific

interests of individuals or classes of individuals in the assets contained in the Pension Fund.

Summary Judgment will be entered for the defendant.